# CIRCUIT COURT OF FAIRFAX COUNTY

M.C.

v.

S.H.
and N.N.

October 25, 1999

Case No. (Chancery) 153807

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on Complainant and Intervenor's Joint Motion to Produce Records. Because all parties are presently before the Court and agree that this important issue should be decided now, the Court will rule on the issue in these ongoing custody proceedings even though a *subpoena duces tecum* has not yet been served. On September 24, 1999, Complainant M.C. ("Complainant") and Intervenor N.N. ("Intervenor") filed their Joint Motion requesting that the Court order the Department of Child Protective Services ("CPS") to produce all documents and things pertaining to an investigation of Defendant S.H. ("Defendant") for allegedly having inappropriate sexual contact with her son. For the reasons set forth in this opinion, the Court grants in part the Joint Motion to Produce Records.

## I. *Background*

Dr. Benjamin Schutz, a neutral expert chosen by the parties, contacted CPS with concerns about allegations of improper sexual contact between Defendant and her son. An investigation was performed by Ms. Sandra Browning which resulted in a finding of "unfounded." Complainant and Intervenor seek to compel disclosure of the investigation records, or in the alternative, to allow Ms. Browning to have access to the records during a

deposition. CPS and Defendant oppose the disclosure asserting that the records are confidential under Va. Code § 63.1-53 ("Section 53").

## II. *Analysis*

### A. *Interpretation of Va. Code § 63.1-53*

The parties have agreed that Section 53 applies to the issues involved in this dispute. But, while Complainant and Intervenor agree that an analysis of Section 53 is necessary, they assert that Va. Code § 63.1-209 ("Section 209") is dispositive. Therefore, assuming, without deciding, that Section 53 does apply in these circumstances, the Court must determine the meanings of Section 53 and Section 209, and the effects of those statutes on the Joint Motion.

Section 53 reads, in relevant part, as follows:

> *Allowing access to records.* All records and statistical registries of the State Department of Social Services and of the local boards ... *shall be confidential and shall not be disclosed except to persons having a legitimate interest and persons specified hereinafter and in Sec. 63.1-209 ....*
>
> [R]ecords and credit information shall be made available as aforesaid only on an individual basis, and the person, firm, or corporation shall name the individual whose record is requested. *No record shall be made available except for purposes directly connected with the administration of the public welfare program.*

Va. Code § 63.1-53 (emphasis added). Section 209 reads, in relevant part, as follows:

> *Confidential records.* The records of all child-welfare agencies ... shall be confidential information, provided that ... *it shall be disclosed upon the proper order of any court*, and that it may be disclosed to any person having a legitimate interest in the placement of any such person ... .
>
> Persons having a legitimate interest in child protective services records of local departments of social services include, but are not limited to ... a parent, grandparent, or any other person when such parent, grandparent, or other person would be considered by the local

department as a potential caretaker of the child in the event the department has to remove the child from his custodian.

Va. Code § 63.1-209 (emphasis added).

CPS and Defendant argue that in order to decide the instant issue, the Court need look no further than the second sentence of the second paragraph of Section 53, which reads "no record shall be made available except for purposes directly connected with the administration of the public welfare program" (hereinafter referred to as the "Purposes Provision"). CPS and Defendant assert that the Purposes Provision is an across-the-board restriction on the access to CPS records for all persons. Complainant and Intervenor argue that the Purposes Provision does not apply to records of CPS investigations and that Section 209 governs the question of disclosure in this case.

If the language of a statute is clear and unambiguous, there is no need for construction by the court, and the plain meaning of the words and intent of the enactment will be given to it. *Brown v. Lukhard,* 229 Va. 316, 321 (1985). When the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because the words of the statute will be taken as written to determine their meaning. Language is ambiguous if it admits of being understood in more than one way. *Id.*

The first sentence of Section 53 provides that records will be "confidential and shall not be disclosed except to persons having a legitimate interest and persons specified hereinafter and in § 63.1-209" (hereinafter referred to as the "Exception Provision"). As the language of the Exception Provision can be reasonably construed as granting records access either (1) to one group of persons, each of whom must meet all three requirements, or (2) to three groups of persons, each of whom need meet only one of the three requirements, the Court finds that the Exception Provision is ambiguous. The Court, therefore, must "construe the statute to ascertain and give effect to the intention of the legislature." *Armstrong v. Erasmo,* 220 Va. 883, 890 (1980).

In determining the intent of the General Assembly, the Court is guided by accepted principles of statutory construction. A statute should be construed so as to give effect to all its component parts. *Commonwealth v. Jones,* 194 Va. 727, 731 (1953). Moreover, the Court must harmonize potentially conflicting statutes if they can be construed in a manner which gives effect to both statutes. *Albemarle County Supervisors v. Marshall,* 215 Va. 756, 761 (1957).

If the Exception Provision is construed as creating only one group, then the provisions of Section 209 effectively would be negated because all of the requirements of Section 53 would still have to be satisfied before access is

permitted. If the Exception Provision is construed as creating three groups, then satisfaction of the requirements set out in Section 209 would be sufficient to grant access to certain confidential records, thereby giving meaning to the provisions of both Section 53 and Section 209. The fact that Section 209 does not refer to Section 53 suggests that the legislature intended for Section 209 to provide a basis for access to certain confidential records without being restricted by the provisions of Section 53. Construing the Exception Provision as creating three distinct groups, therefore, harmonizes any seeming conflict between Section 53 and Section 209. Therefore, the Court finds that the Exception Provision of Section 53 grants records access to three distinct groups: a legitimate interest group, a Section 53 group, and a Section 209 group.

The Court also rejects the argument of CPS and Defendant that the Purposes Provision of Section 53 applies to Section 209. The Purposes Provision applies only to the access of records authorized in Section 53, to wit, records pertaining to the public welfare program. Any access to CPS records that is authorized by Section 209 is unaffected by the Purposes Provision.

## B. *Interpretation of Va. Code § 63.1-209*

Section 209 provides that the records of all child-welfare agencies shall be confidential but shall be disclosed "upon proper order of any court." The section does not, however, articulate the legal standard to be applied by the courts in determining disclosure, and the Virginia Supreme Court has not spoken on this issue. As the propriety of disclosure will depend on the myriad circumstances presented to a court, this Court holds that the determination of disclosure is discretionary and must be decided on the basis of the circumstances presented in each individual case. In this case, the Court must consider the competing policy interests of (1) providing the best and most complete information to the fact-finder who must eventually determine the custody arrangements for the children involved in this case and (2) avoiding the potential chilling effect on the general public's reporting of information to CPS because of the loss of confidentiality of the records.

The confidentiality requirement of Section 209 serves to encourage individuals to report possible abuse and neglect to CPS. Persons who are close enough to children to observe questionable conduct may not be willing to make a report without the benefit of confidentiality. The confidentiality requirement allows these persons to report their concerns to the proper authorities without creating an awkward situation between themselves and the alleged abuser. If CPS records lose their confidential status, potential

eyewitnesses to abuse and neglect may no longer be willing to report this important information.

In this case, however, confidentiality is not a factor. The Court has reviewed the CPS records *in camera* and finds that the identities of all persons interviewed during the investigation are already known to the parties. In fact, the redacted records tendered by CPS deleted only the name of Dr. Schutz, who initially contacted CPS, another fact already known to the parties.

Nonetheless, the Court is mindful of potential misuse of the information contained in the CPS report. Therefore, based on the absence of confidentiality concerns in this case, the Court exercises its discretion to grant the Joint Motion to Produce Records but will issue a protective order regarding those records (1) allowing disclosure only for the limited purpose of use in the ongoing custody proceedings and (2) limiting access to the CPS records solely to those persons who endorse the protective order.

## Conclusion

For the reasons articulated herein, the Court grants Complainant and Intervenor's Joint Motion to Produce Records, in part, and issues a protective order governing the disclosure of those records.