PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and Powell, JJ., and Russell, S.J.

MICHAEL HAAS

OPINION BY
v. Record No. 110599      SENIOR JUSTICE CHARLES S. RUSSELL
                              January 13, 2012
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This is an appeal from a judgment of the Court of Appeals dismissing a petition for a writ of actual innocence based on non-biological evidence. By his sole assignment of error, the petitioner contends that the Court of Appeals abused its discretion by making evidentiary findings and dismissing his petition without first referring the case to the circuit court for an evidentiary hearing.

Facts and Proceedings

On July 22, 1994, Michael Haas was convicted at a bench trial in the Circuit Court of Powhatan County of sodomy committed upon his two sons in 1992 and 1993, when they were eleven and nine years of age, respectively. He was sentenced to life imprisonment in each case. He appealed his convictions to the Court of Appeals and to this Court and both appeals were denied. In 2000, Haas filed a petition for a writ of habeas corpus in the circuit court which was dismissed as time-barred. This Court awarded him an appeal of that ruling but ultimately

affirmed it by a published opinion.  Haas v. Lee, 263 Va. 273, 278, 560 S.E.2d 256, 258 (2002).

Haas then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia claiming that he was entitled to equitable tolling of the statute of limitations because he was actually innocent.  He attached to his petition an affidavit from his elder son recanting his trial testimony, an affidavit from his daughter that the boys' trial testimony was false, and an affidavit from a physician questioning the reliability of the expert medical testimony the Commonwealth had presented at trial.  The district court declined to grant equitable tolling of the statute of limitations because even in light of the affidavits, Haas had failed to show that under all the circumstances it was more likely than not that no reasonable fact-finder would have convicted him of sodomizing his two sons.  Haas v. Lee, Civil No. 3:02CV572 (E.D. Va. 2003) (unpublished).  Haas appealed that decision to the United States Court of Appeals for the Fourth Circuit, which dismissed the appeal by an unpublished order in 2004.  Haas v. Warden, No. 03-7703 (4th Cir. 2004).

On May 11, 2010, Haas filed in the Court of Appeals a petition for a writ of actual innocence based on non-biological evidence pursuant to Code § 19.2-327.10.  Attached to the petition were affidavits by his two sons, then adults in their

2

late twenties, recanting the testimony they had given at trial, and an affidavit by their elder sister, recanting her trial testimony and stating that the boys' testimony had been suggested and coached by their mother and a counselor named Susan Boyles.  Also attached were affidavits by two physicians questioning the reliability of the expert medical testimony the Commonwealth had presented at trial.

The Commonwealth filed a motion to dismiss the petition. Attached was an affidavit by Gregory A. Neal, the Sheriff of Powhatan County, as to individual interviews he had conducted with the younger son and the elder daughter in 1994, including transcripts of the interviews.  Also attached were affidavits by the children's mother, Haas' former wife, and by Susan Boyles, that they had never coached or rehearsed the children's testimony or encouraged them to lie at their father's trial.

After a review of the petition, the motion to dismiss, the petitioner's reply to the motion, the attached affidavits and exhibits, the parties' briefs and the records of the prior proceedings in the case, a panel of the Court of Appeals denied Haas' request to refer the case to the circuit court for an evidentiary hearing.  By an order entered March 1, 2011 that included a detailed review of the record, the Court of Appeals granted the Commonwealth's motion to dismiss the petition for a writ of actual innocence.  We awarded Haas an appeal.

## Analysis

Chapter 19.3 of Title 19.2 of the Code, captioned "Issuance of Writ of Actual Innocence Based on Nonbiological Evidence," was adopted by the General Assembly in 2004. 2004 Acts ch. 1024. That chapter, consisting of Code §§ 19.2-327.10 through 19.2-327.14, confers original jurisdiction upon the Court of Appeals to entertain petitions for such writs. The chapter also specifies the form and contents required in such petitions, the procedures to be followed in deciding such cases, the relief that may be granted, and provides for appeals to this Court.

The standard of review we apply in deciding appeals under this chapter requires that we will be bound by factual findings contained in the record before us that are approved by the Court of Appeals unless they are plainly wrong or without evidence to support them, but we will review de novo the Court of Appeals' conclusions of law and conclusions based on mixed questions of law and fact. Turner v. Commonwealth, 282 Va. 227, 246, 717 S.E.2d 111, 121 (2011); Carpitcher v. Commonwealth, 273 Va. 335, 342-43, 641 S.E.2d 486, 490-91 (2007).

Code § 19.2-327.11(A) requires the petitioner seeking such a writ to allege under oath (1) the crime of which he was convicted and that the conviction was upon a plea of not guilty, (2) that he was actually innocent of the crime, (3) an exact description of the previously unknown or unavailable evidence

supporting his claim of innocence, (4) that such evidence was unknown or unavailable to petitioner or his attorney when the conviction became final in the trial court, (5) the date the evidence became available and the circumstances under which it was discovered, (6) that the evidence was such as could not, by the exercise of due diligence, have been discovered before the expiration of 21 days after the entry of the final order of conviction, (7) that the evidence is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt, and (8) that the evidence is not merely cumulative, corroborative or collateral.

Code § 19.2-327.12 provides, in pertinent part:

> If the Court of Appeals determines from the petition, from any hearing on the petition, from a review of the records of the case, or from any response from the Attorney General that a resolution of the case requires further development of the facts, the court may order the circuit court in which the order of conviction was originally entered to conduct a hearing within 90 days after the order has been issued to certify findings of fact with respect to such issues as the Court of Appeals shall direct.

In the present case, the Court of Appeals determined that no further development of the facts was required in order to resolve the case and denied Haas' request that the case be returned to the circuit court for an evidentiary hearing. Haas

5

concedes that the decision whether to order such a hearing lay within the discretion of the Court of Appeals, but contends that, in the circumstances of this case, the Court's refusal of his request amounted to an abuse of discretion.

Code § 19.2-327.13 provides, in pertinent part:

> Upon consideration of the petition, the response by the Commonwealth, previous records of the case, the record of any hearing held under this chapter and, if applicable, any findings certified from the circuit court pursuant to an order issued under this chapter, the Court of Appeals, if it has not already summarily dismissed the petition, shall either dismiss the petition for failure to state a claim or assert grounds upon which relief shall be granted; or the Court shall (i) dismiss the petition for failure to establish previously unknown or unavailable evidence sufficient to justify the issuance of the writ, or (ii) only upon a finding that the petitioner has proven by clear and convincing evidence all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11, and upon a finding that no rational trier of fact could have found proof of guilt beyond a reasonable doubt, grant the writ. . . . The burden of proof in a proceeding brought pursuant to this chapter shall be upon the convicted person seeking relief.

Thus, while the Court of Appeals is vested with authority to refer a case brought under this chapter back to the circuit court for an evidentiary hearing if, in its discretion, it deems that the facts require further development, it is not required to do so. The Court of Appeals is vested with broad discretion in determining whether the facts require further development. Turner, 282 Va. at 247, 717 S.E.2d at 121; Johnson v. Commonwealth, 273 Va. 315, 325, 641 S.E.2d 480, 486 (2007).

6

The provisions of Code § 19.2-327.13, quoted above, give the Court of Appeals clear authority to decide such a petition on the basis of matters contained in the record.[1] Those may include the record of the original trial as well as records of all post-trial proceedings including the petition for a writ of actual innocence.

The Court of Appeals, in proceedings under this chapter, acts as a court of original jurisdiction. It therefore has the same authority to weigh and evaluate documentary and physical evidence as a trial court would have. Where a new witness has been found, who has not previously testified and who could not with due diligence have been discovered before the conviction became final, reference to the circuit court for an evidentiary hearing might be appropriate because of a trial judge's unique ability to see and hear the witness first hand and to evaluate his credibility from his appearance and demeanor while testifying. Witnesses who testified at the original trial, but later decide to recant their testimony, stand on a different footing.

---

[1] That authority is the equivalent of the authority conferred on this Court, when acting as a court of original jurisdiction in habeas corpus cases, to make its decision on the basis of the record when the Court determines that the issue "can be fully determined on the basis of recorded matters." Code § 8.01-654 (B)(4).

7

Traditionally, courts view recantations with "great suspicion." Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984). "Skepticism about recantations is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon." United States v. Provost, 969 F.2d 617, 621 (8th Cir. 1992). We have observed: "Recantation evidence is generally questionable in character and is widely viewed by courts with suspicion because of the obvious opportunities and temptations for fraud. Unless proven true, recantation evidence merely amounts to an attack on a witness' credibility by the witness herself." Carpitcher, 273 Va. at 346, 641 S.E.2d at 492 (citations omitted); see also Turner, 282 Va. at 248, 717 S.E.2d at 122.

Such skepticism increases with the passage of time. Recantation evidence appearing long after the trial has ended places the opposing party at a disadvantage similar to that which justifies statutes of limitations. Memories may have faded, witnesses may have disappeared or become incapable of testifying, physical evidence may be unrecoverable[2] and the

_____

[2] The present case illustrates that concern. The Commonwealth's expert medical witnesses at trial presented photographs of the rectal examinations they had made of the boys, showing graphic evidence of chronic sexual abuse. In deciding the case, the trial judge commented: "[T]hese pictures here do speak volumes in my opinion." For reasons unexplained,

8

recanting witness may have had ample time to acquire an extraneous motive to falsify his original testimony.

In Carpitcher, the defendant was convicted of sexual assault on a child. The victim, who had been the Commonwealth's principal witness at trial, later recanted her testimony and the defendant filed a petition for a writ of actual innocence in the Court of Appeals based upon the victim's recantation. The Court of Appeals, in that case, referred the issue to the circuit court for an evidentiary hearing. 273 Va. at 341, 641 S.E.2d at 489. After hearing the victim's testimony, the circuit court reported to the Court of Appeals that the witness had given three versions of the facts and that she was no longer a credible witness. Id. at 341, 641 S.E.2d at 490. The circuit court concluded that it could not determine whether the victim's recantation was true. Id. The Court of Appeals held that the recantation evidence would only be "material" within the meaning of Code § 19.2-327.11(A) if the defendant proved by clear and convincing evidence that the recantation was "true." Id. at 342, 641 S.E.2d at 490. We affirmed, holding that although the term "material" has different meanings in other contexts, within the context of Code § 19.2-327.11(A), "evidence supporting a petition for a writ of actual innocence based on non-biological

_____

the photographs no longer appear in the record and were not before the Court of Appeals.

evidence must be true.  Manifestly, evidence that is false cannot be 'material' under the terms of the statute."  Id. at 345, 641 S.E.2d at 492.

The testimony of the boys at trial in the instant case was graphic and explicit.  The trial judge, having seen and heard them and having observed their demeanor, stated: "They were scared and worried, they [were] children and I would suspect their testimony to be pretty much as it came out here today.  There was no equivocation, there was no hesitation, both of them said their father, as awful as it might be and hard as [it] is, yes, their father [sodomized them].  And I believe it.  And I find the defendant guilty of each charge."

The boys' testimony was abundantly corroborated.  Prior to the trial in 1994, Sheriff Neal, then an investigator with the Sheriff's Department, interviewed the boys individually, without their mother's presence.  They told him that their father slept in their beds with them and sodomized them as often as once a week over a long period.  The younger son told him that he kept his mattress pushed up against the wall, and slightly up the wall, so he would not fall into the "crack" between the mattress and the wall while his father was "pounding" him.  The mother and the elder brother confirmed seeing the mattress in that position.  Haas admitted that he sometimes slept with the boys and confirmed that his younger son pushed his mattress up

against the wall.  The mother testified to finding blood on the younger boy's sheets.

Susan Dodson, the boys' maternal aunt, testified to several rambling telephone calls she received from Haas.  In the last of these, she said that Haas' speech was slurred, but he said: "[H]ell yeah, I did it, I'd do it again, I screwed the kids, you can go to hell with the rest of them because you can't prove it."  She confirmed the truth of this testimony in a recent affidavit filed as an exhibit with the Attorney General's motion to dismiss Haas' petition.

The trial judge found most persuasive the testimony of four physicians the Commonwealth presented at trial.  Haas' counsel made no objection to their qualifications and the court qualified all four to give expert testimony.  They examined the boys in 1994, over a year after the alleged sexual abuse had occurred.  Two were residents in pediatrics at the Medical College of Virginia and two were board-certified pediatricians with extensive experience in child sex-abuse cases.  The younger boy was examined under anesthesia but gave an account of his experiences consistent with sexual abuse.  The rectal examinations of both boys were markedly abnormal.  The younger boy's examination revealed a jagged appearance resulting from tearing tissue later healed but leaving marked scarring.  The older boy showed enlargement and a marked decrease of sphincter

11

tone.  The physicians all testified that these findings were consistent with chronic penetration from the outside.  The photographs of the conditions revealed by these examinations "spoke volumes" in the opinion of the trial court.

In deciding the issue presented by Haas' petition, the Court of Appeals had to weigh the records of the prior proceedings, including all of the foregoing evidence, against the physicians' affidavits attached to Haas' petition.  These affidavits were entitled to little weight because the physicians giving the affidavits, unlike those who testified, never examined either the injuries inflicted on the victims or the contemporaneous photographs showing those injuries.  Further, the evidence of the physicians' affidavits was not newly discovered and such as to have been unavailable to the petitioner, by the exercise of due diligence, before the expiration of 21 days following the entry of the final order of conviction.  At trial, Haas offered medical testimony, which the trial court found unpersuasive, taking issue with the Commonwealth's medical evidence.  The physicians' affidavits attached to Haas' petition are, therefore, merely cumulative or corroborative of the defense evidence rejected by the trial court.

Haas had the burden of proving to the Court of Appeals, by clear and convincing evidence, that the children's recantations

12

are true, that the evidence upon which he relies could not have been timely discovered by the exercise of due diligence and is not merely cumulative, corroborative or collateral, and that, weighing all the evidence in the record against that which he contends to be newly discovered and previously unavailable, no rational trier of fact could have found him guilty beyond a reasonable doubt. Code § 19.2-327.13.

The Court of Appeals was entitled to assume that the witnesses called by Haas in support of his petition would testify consistently with their affidavits, accord to that evidence the weight, if any, to which it was entitled, and balance that against the weight of all other evidence in the record. Having thus weighed the evidence, the Court of Appeals found that Haas had failed to carry his burden of proof and, accordingly, granted the Commonwealth's motion to dismiss his petition.

## Conclusion

For the reasons stated, we conclude that the Court of Appeals did not abuse its discretion in declining to refer the case back to the circuit court for an evidentiary hearing and we will affirm the judgment from which this appeal was taken.

Affirmed.

13